Michele Braukmann
MERIDIAN LAW, PLLC
100 N. 27th Street, Suite 320
Billings, MT  59101
Ph:  406.578.8855
Cell:  406.671.3963
michele@meridianlawmt.com
www.meridianlawmt.com

Attorneys for the Plaintiff

MONTANA THIRTEENTH JUDICIAL DISTRICT COURT

YELLOWSTONE COUNTY

| | |
|---|---|
| LEIGH ANN LUNDVALL,<br><br>Plaintiff,<br><br>vs.<br><br>BILLINGS CLINIC,<br>Defendant. | Cause No. _____<br><br>Judge _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, Leigh Ann Lundvall (hereinafter "Lundvall" or "Plaintiff"), by and through Counsel of Record, Michele L. Braukmann, of Meridian Law, PLLC, and hereby asserts and alleges that she has been the subject of unlawful employment actions by her former employer, Billings Clinic (hereinafter "the Clinic"), including unlawful discrimination and wrongful termination, during the course of her employment and continuing thereafter.  In support of this Complaint, Plaintiff alleges as follows:

## PARTIES

1.  Plaintiff is Leigh Ann Lundvall, a former employee with Billings Clinic, who resides in Yellowstone County, Montana. ███████████████████████████

    ████████████████████████████████████

    ████████████████████████████████████

    ███████████████████████████████ These conditions constitute legally-defined disabilities within the meaning and intent of the Montana Human Rights Act, the Americans with Disabilities Act, and the Rehabilitation Act.  Plaintiff brings this cause of action under various state and federal statutes, including the Montana Human Rights Act and the Wrongful Discharge from Employment Act.

2.  Defendant is Billing Clinic, a not-for-profit corporation conducting business in the State of Montana, and subject to all requirements of the Montana Human Rights Act and related federal and state law, as well as the Montana Wrongful Discharge from Employment Act.

## JURISDICTION AND VENUE

3.  Plaintiff hereby incorporates the previous paragraphs, as if fully set forth herein.

4.  Jurisdiction is proper in Yellowstone County, Montana, as the parties are located in Yellowstone County and the acts and omissions applicable to this lawsuit occurred in Yellowstone County, Montana.

5.  Venue is proper in Yellowstone County, Montana, as the parties are located in Yellowstone County and the acts and omissions applicable to this lawsuit occurred in Yellowstone County, Montana.

## FACTS SUPPORTING ALL CAUSES OF ACTION

6.  Plaintiff hereby incorporates the previous paragraphs, as if fully set forth herein.

7.  Plaintiff was employed with Defendant for over twenty years, beginning her employment as a Licensed Practical Nurse and eventually transitioning into a Labor and Delivery Nurse position, in which position she served for the Clinic through May 15, 2020.  She was terminated from her employment with Defendant as a result of an ongoing pattern and practice of Defendant to discriminate against her and refuse to engage in a good faith process to determine the extent, scope, and responsibilities of the civil rights issued involved herein.

8.  Plaintiff was also terminated from her employment with the Clinic based upon a lack of good cause for termination, as that term is defined by the Montana Wrongful Discharge from Employment Act.

9.  Plaintiff commenced her employment with the Clinic in June 1999.

10. Plaintiff successfully performed her job duties in her greater-than two decades of employment with the Clinic.

11. For a number of years, concurrent with her employment, ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

to manage her ████████████ in a manner that allows her to perform as a Labor and Delivery Nurse at the highest levels possible.

12. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

13. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

14. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

15. Prior to ████████████, Defendant had never expressed a single concern to Plaintiff about ████████████████████████████████████, and in no way were they interfering with Plaintiff's job performance.

16. However, simply as the result of ████████████████████████████████████ ████████ ████████████████████, the Clinic issued a written reprimand to Plaintiff.

17. No prior "warnings" (verbal or written) had ever been issued by the Clinic to Plaintiff ████████████████████████.  The written discipline issued at that time, ████████, by the Clinic, did **not** relate to anything regarding her job duties – it related only to Plaintiff's ████████████████████████.

18. As part of her efforts to address any concerns that the Defendant had, Plaintiff underwent ████████████████████████████████████████████████████████, by the Clinic.

19. At no time during ████████████ were any issues of concern raised by the Clinic. Plaintiff ████████████████████████████████████████████.

20. Plaintiff continued performing her job duties effectively, and in fact, at a superior level, for years ████████████████ ████████ ████████.

21. Plaintiff was promoted to the Maternal Flight Team after this single ████ incident.

22. During the course of the past several years (and, in fact, for all of the years of her employment with the Clinic), Plaintiff has received numerous accolades, commendations, honors, and acknowledgments by various members of the Clinic staff and her patients.

23. Plaintiff is a trusted and highly-skilled Labor and Delivery Nurse.

24. Plaintiff has assisted in the delivery of thousands of babies, she has cared for thousands of Mothers in labor and delivery throughout the Yellowstone County region, and she has routinely worked long and straining hours to ensure her patients' needs are met.

25. Plaintiff takes an incredible amount of pride in her work.  That is apparent to virtually everyone she works with.  Patients love her, and the medical team at the Clinic, including her immediate supervisors, routinely praised her skills and work ethic.

26. In 2019, Plaintiff was honored in a "Twenty Year Ceremony" held by the Clinic.  In that ceremony, Plaintiff was commended for her exceptional service, and she was described as an extraordinary employee, who went above-and-beyond for her patients and for the Clinic.

27. During the course of the following year, after the Commendation Ceremony, it continued to be evident that Plaintiff could not only successfully perform the duties of her job position, but she far exceeded the basic requirements of the position.

28. ██████████████████  ████████████████████████████

██████████  This incident did not occur, in any relationship, to Plaintiff's work. █

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████, she continued to work as normal, without a single complaint or issue

during the following few months. Her work performance continued at the same

exemplary level that it had always been. Plaintiff was ████████████████████

███████████████████████████████████████████

████

29. Then, unexpectedly, █████████████, Plaintiff was asked to meet with executive staff

and Human Resources within the Clinic. She was put on administrative leave, prior to

the meeting with the Clinic. While she was not advised about what the meeting was

intended for, prior to it occurring, ██████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████

30. Through her representatives, and in in-person meetings with the Clinic, Plaintiff clearly

communicated that ██████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████

31. Plaintiff requested that she be given an accommodation to allow her to continue work at the Clinic, and she offered various options, ████████████████████████ ███████████████████████████████████████████████████

32. No complaints had been made, at any time during this time period, or ever for that matter, about Plaintiff's ability to successfully perform her job duties.

33. Plaintiff made clear that she fully intended to continue in her employment as a Nurse, and that none of her medical care providers had any concerns about her ability to do so successfully.

34. The Clinic refused to listen to anything Plaintiff conveyed to them.

35. The Clinic refused to engage in any sort of good faith process to determine the scope of ████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████

36. Tellingly, during the course of this process, the Clinic did not communicate, in any manner, what, if any, concerns that it actually had.  They did not ask Plaintiff to provide them any records of her treatment, her medical care, or the like. ██████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████

37. The Clinic did not produce a single employee, patient, or other person that asserted a complaint about Plaintiff's job performance.

38. The Clinic refused to articulate, in any meaningful form, why they believed Plaintiff was no longer able to perform her job duties in a successful manner – because, in fact, any such assertion would have been completely-unsupportable.

39. Plaintiff repeatedly asked for accommodations to be provided her, before termination. She indicated, through her representatives, and in person, that she would be willing to have any reasonable discussion with the Clinic about what they purportedly "needed" to maintain her employment.

40. Plaintiff offered to make herself or any of her treatment providers available to engage in a good-faith process to determine how to address the Clinic's purported "concerns." The Clinic refused to engage in any sort of good faith process.

41. Instead, in a malicious and extremely-hurtful manner, ███████, the Clinic unilaterally terminated Plaintiff's employment, without engaging in any good faith process to resolve the issues, without addressing how Plaintiff's disabilities, and the Clinic's knowledge of them, could be accommodated, and without providing Plaintiff any sort of option, other than termination from employment.

42. The Clinic lacked good cause for Plaintiff's termination from her employment.

43. Defendant had taken from Plaintiff the professional position where she had given over twenty years of her employment life, and where she had served patients and community members with advocacy, skill, and passion.  She was not even allowed to empty out her own locker.

44. In terminating Plaintiff's employment, the Clinic relied upon the five-year old single incident of reprimand, completely ignoring their legal duties to attempt to address the disability issues involved herein.

45. Plaintiff has now lost the employment position that she worked so very hard to develop the past two decades.  She has been irrevocably damaged, as a result of the Clinic's callous disregard of her essential right to employment, ability to provide for her children ███████████ and refusal to acknowledge her efforts to obtain treatment and care for her disabilities.

46. Plaintiff now brings this claim, under the causes of action below, seeking redress against the Clinic for its unlawful and malicious actions.

## CAUSES OF ACTION

## COUNT ONE -- DISCRIMINATION IN VIOLATION OF THE MONTANA HUMAN RIGHTS ACT

47. Plaintiff hereby incorporates the previous paragraphs, as if fully set forth herein.

48. The Montana Human Rights Act, Title 49 of Mont. Code Ann. *et seq.* (hereinafter "the MHRA"), prohibits employers from discriminating against qualified individuals with and/or perceived to have disabilities.  It states, in relevant part:

> 49-1-102.   Freedom from discrimination. (1) The right to be free from discrimination because of race, creed, religion, color, sex, physical or mental disability, age, or national origin is recognized as and declared to be a civil right. This right must include but not be limited to:
>
> (a) the right to obtain and hold employment without discrimination …

49. Mont. Code Ann. §49-2-101 defines "physical or mental disability" as follows:

> (19)  (a)  "Physical or mental disability" means:

(i)   a physical or mental impairment that substantially limits one or more of a person's major life activities;

(ii)  a record of such an impairment; or

(iii) a condition regarded as such an impairment.

50. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Not only did Plaintiff have "a record of such

… impairment[s] …," but as the facts alleged herein establish, the Clinic perceived

such "impairment[s]" to exist, and the Clinic perceived Plaintiff to have "a condition

regarded as such … impairment[s]."

51. Section 49-2-101(19)(b) of the Montana Code further provides:

(b)   Discrimination based on, because of, on the basis of, or on the grounds of physical or mental disability includes the failure to make reasonable accommodations that are required by an otherwise qualified person who has a physical or mental disability. An accommodation that would require an undue hardship or that would endanger the health or safety of any person is not a reasonable accommodation.

52. Plaintiff was fully-qualified to be a Labor and Delivery Nurse.  She had performed her

work duties successfully for many years.  Plaintiff received numerous accolades,

commendations, and awards for her service, including even from those involved in the

decision to terminate her employment.  Plaintiff was fully able to perform all of the essential functions of her position.

53. Indeed, Defendant had approved Plaintiff for expanded job duties during the time of her employment, and most recently, in the several years leading up to her termination. These duties included working with the Clinic's Flight Team, and other duties reserved for those highly-qualified nursing staff within the Labor and Delivery Unit.  At the time of Plaintiff's "Twenty-Year Service Ceremony," she was repeatedly lauded and commended for her service, the quality of care she provided patients, and her impressive work history.  Plaintiff was more than qualified to perform her job duties, as recognized, on numerous occasions, by Defendant itself.

54. Defendant is a covered employer to which the MHRA applies.

55. Defendant terminated and disqualified Plaintiff from employment because Plaintiff suffers from ████████████████████████████████████████ ████████████████ and/or because she was perceived as such by the Clinic.

56. Defendant discriminated against Plaintiff when it terminated Plaintiff's employment, as well as failed "to make reasonable accommodations that are required by an otherwise qualified person …".

57. Defendant has no reasonable basis, nor did it assert, that providing an accommodation to Plaintiff "would require an undue hardship or … would endanger the health or safety of any person."

58. Defendant made no assessment, let alone an individualized assessment, to determine whether Plaintiff could perform the essential functions of her job, as is required under the MHRA.

59. Defendant made no assessment, let alone an individualized assessment, to determine whether Plaintiff could continue to be successfully employed with the Clinic, as is required under the MHRA.

60. Defendant made no assessment, let alone an individualized assessment, to determine whether a reasonable accommodation would enable Plaintiff to continue her employment with the Clinic, as is required under the MHRA.

61. Defendant made no effort to engage in a good-faith process with Plaintiff to determine how to address any of Defendant's purported concerns.

62. By taking adverse employment action against Plaintiff, by refusing to engage in a good-faith process with her, related to her disability, by placing her on leave, by failing to make the legally-required individual assessments, by failing to determine whether Plaintiff could remain employed, by failing to determine whether a reasonable accommodation would enable her to remain employed, and by ultimately terminating her employment, Defendant has denied Plaintiff the opportunity of employment, discriminated against her for her disability, and has required and endorsed discrimination against individuals suffering from ███████████████, all in violation of the MHRA.

63. As a result of the Clinic's actions, Plaintiff has suffered and will continue to suffer both economic and non-economic harm.

64. Defendant's actions were not only illegal, but they were blatantly malicious.

## COUNT TWO – WRONGFUL DISCHARGE

65. The Wrongful Discharge from Employment Act ("WDEA"), Mont. Code Ann. § 39-2-901 *et seq.*, provides that employees who have completed their probationary period can only be terminated for good cause.

66. Lundvall was a loyal, honest and hardworking employee who had worked for Billings Clinic for many years.

67. Defendant did not have good cause to terminate Lundvall's employment.

68. Defendant violated public policy by terminating Lundvall's employment, acting contrary to Lundvall's medical conditions, refusing to accept Lundvall's requests for accommodation, failing to protect her medical condition, not fully informing Lundvall, at all times, of what adverse employment actions Defendant was taking, and failing to adequately communicate with Lundvall information related to her employment.

69. Lundvall has suffered and continues to suffer damages as a result of her wrongful termination, including but not limited to lost wages, fringe benefits and interest on lost wages and fringe benefits.

## COUNT THREE -- DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

70.  Plaintiff hereby incorporates the previous paragraphs, as if fully set forth herein.

71. The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (hereinafter "the ADA") prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12101.

72. 

73. As previously alleged herein, Plaintiff is an individual with a disability under the ADA.

74. As previously alleged herein, Plaintiff was fully able to perform all of the essential functions of her position.

75. Indeed, Defendant had approved Plaintiff for expanded job duties during the time of her employment, and most recently, in the several years leading up to her termination. These duties included working with the Clinic's Flight Team, and other duties reserved for those highly-qualified nursing staff within the Labor and Delivery Unit.  At the time of Plaintiff's "Twenty-Year Service Ceremony," she was repeatedly lauded and commended for her service, the quality of care she provided patients, and her impressive work history.  Plaintiff was more than qualified to perform her job duties, as recognized, on numerous occasions, by Defendant itself.

76. Defendant is a covered employer to which the ADA applies.

77. Defendant terminated and disqualified Plaintiff from employment because Plaintiff suffers █████████████████████████████████████████████████ ████████████.

78. As previously alleged, Defendant acted unlawfully in discriminating against Plaintiff for her medical conditions, and Defendant refused to engage in any sort of good faith inquiry about whether accommodations were allowed or required by law.

79. Defendant made no assessment, let alone an individualized assessment, to determine whether Plaintiff could perform the essential functions of her job, as is required under the ADA.

80. Defendant made no assessment, let alone an individualized assessment, to determine whether Plaintiff could continue to be successfully employed with the Clinic, as is required under the ADA.

81. Defendant made no assessment, let alone an individualized assessment, to determine whether a reasonable accommodation would enable Plaintiff to continue her employment with the Clinic, as is required under the ADA.

82. Defendant made no efforts to engage in a good-faith process with Plaintiff to determine how to address any of Defendant's purported concerns.

83. By taking adverse employment action against Plaintiff, by refusing to engage in a good-faith process with her, related to her disability, by placing her on leave, by failing to make the legally-required individual assessments, by failing to determine whether Plaintiff could remain employed, by failing to determine whether a reasonable accommodation would enable her to remain employed, and by ultimately terminating her employment, Defendant has denied Plaintiff the opportunity of employment, discriminated against her for her disability, and has required and endorsed discrimination against individuals suffering from ███████████████, all in violation of the ADA.

84. As a result of the Clinic's actions, Plaintiff has suffered and will continue to suffer both economic and non-economic harm.

85. Defendant's actions were not only illegal, but they were blatantly malicious.

## COUNT FOUR -- DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT

86. Plaintiff hereby incorporates the previous paragraphs, as if fully set forth herein.

87. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency …".

88. Defendant, upon information and belief, receives the benefit of "Federal financial assistance …" and/or participates in "program[s] or activit[ies] …", including the receipt of federal funds, not limited to Medicaid and Medicare funds, and other federal programming funds. Therefore, Defendant is subject to the requirements of Section 504 of the Rehabilitation Act.

89. Because ███████████████████████████████████████████████████ ███████████ substantially limit at least one of Plaintiff's major life activities, and as further alleged herein, Plaintiff is an individual with a disability under the Rehabilitation Act.

90. As alleged herein, Plaintiff was fully-qualified to be a Labor and Delivery Nurse.

91. Indeed, Defendant had approved Plaintiff for expanded job duties during the time of her employment, and most recently, in the several years leading up to her termination. These duties included working with the Clinic's Flight Team, and other duties reserved for those highly-qualified nursing staff within the Labor and Delivery Unit. At the time of Plaintiff's "Twenty-Year Service Ceremony," she was repeatedly lauded and

commended for her service, the quality of care she provided patients, and her impressive work history. Plaintiff was more than qualified to perform her job duties, as recognized, on numerous occasions, by Defendant itself.

92. Defendant has entered into multiple federal contracts for the provision of services for its patients, including with the Medicaid and Medicare systems. These agencies are agencies to which Section 504 of the Rehabilitation Act applies.

93. By taking adverse employment action against Plaintiff, by refusing to engage in a good-faith process with her, related to her disability, by placing her on leave, and by ultimately terminating her employment, Defendant has denied Plaintiff the opportunity of employment, discriminated against her for her disability, and has required and endorsed discrimination against individuals suffering from ███████████████, all in violation of the Rehabilitation Act.

94. As a result of the Clinic's actions, Plaintiff has suffered and will continue to suffer harm.

95. Defendant's actions were not only illegal, but they were blatantly malicious.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that Judgment be entered in favor of Plaintiff and against Defendant and the following relief be awarded:

1. Declaratory relief, including but not limited to a declaration that the Montana Human Rights Act, the Rehabilitation Act, and the Americans with Disabilities Act bar unlawful conduct, such as that engaged in by Defendant, and that Defendant discriminated against Plaintiff in violation of these Acts;

2. Judgment in favor of Plaintiff on her Wrongful Discharge from Employment Act claim;

3.  Lost wages and benefits, in an amount to be determined at trial, including both back and front pay;

4.  Compensatory and consequential damages, including for emotional distress;

5.  Punitive damages against Defendant;

6.  Pre-judgment and post-judgment interest at the highest lawful rate;

7.  Attorneys' fees and costs of this action; and

8.  Any such further relief as is deemed appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all triable issues.

DATED this 5th day of April, 2021.

MERIDIAN LAW, PLLC


By: _Michele L B_____

Michele L. Braukmann
100 N. 27th Street, Suite 320
Billings, MT  59101
Ph:  406.578.8855
Cell:  406.671.3963
michele@meridianlawmt.com
www.meridianlawmt.com